# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**WILLIAM STAPLES,**

        Petitioner,

v.

**TERRY O'BRIEN, Warden,**

        Respondent.

**Civil No.: 1:16-cv-41
(Judge Keeley)**

## **REPORT AND RECOMMENDATION**

### I. INTRODUCTION

On March 15, 2016, Petitioner William Staples ("Petitioner" or "Defendant"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. On March 28, 2016, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 11. On May 6, 2016, Respondent filed a response to the Petition by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 16. On May 9, 2016, the Court entered a Roseboro Notice, informing Petitioner of his right and obligation to respond to the Government's Motion. ECF No. 18. On June 22, 2016, Petitioner filed his Response. ECF No. 23. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

### II. BACKGROUND

**A. Conviction and Sentence**

Petitioner is currently incarcerated at the federal penitentiary in Hazelton, West Virginia.[1] Ex. 1 at 2, ECF No. 17-1. He is serving a 200-month sentence for wire fraud and for illegally possessing a firearm. Id. His projected release date is June 24, 2020. Id.

**B. Prison Disciplinary Proceedings**

    **1.    Incident Report, April 7, 2015**

On January 16, 2015, Petitioner was charged with possession of intoxicants, in violation of Prohibited Act Code § 113.[2] Attach. B at 2, ECF No. 17-3. The reporting officer stated that, while he was locking down cell 201 for count time on January 16, 2015, he detected the aroma of homemade intoxicants from inside Petitioner's cell. Id. Upon request, Petitioner retrieved the contraband from under the bottom bunk. Id. The contraband was contained within two laundry soap bottles, which Petitioner admitted belonged to him. Id. Each bottle was tested using the Alco-Sensor III and determined to have an alcohol content of 0.154 percent. Id.

Per the Bureau of Prisons' ("BOP's") protocol, prison staff conducted an investigation of the charge and the Unit Discipline Committee ("UDC") reviewed the Incident Report and investigation. ECF No. 17-3 at 2. Due to the severity of the charges, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for a hearing. Id. On April 9, 2015, Petitioner received and signed the Inmate Rights at Discipline Hearing

---

[1] The undersigned notes, however, that Petitioner is solely challenging the prison disciplinary proceedings that occurred while he was previously incarcerated at the federal penitentiary in Leavenworth, Kansas.

[2] The original Incident Report was written on January 16, 2015. Attach. B, ECF No. 17-3 at 4. Petitioner received a hearing before the DHO on or about February 4, 2015, regarding this original report. ECF No. 1-2 at 2. However, because Petitioner objected to the original report, the report was rewritten for greater clarity on April 7, 2015. Id. at 3.

form, which informed him of his rights regarding the DHO hearing, including the right to call witnesses and the right to the assistance of a staff representative. Id. at 13. Petitioner requested the assistance of a staff representative. Id. at 16.

On April 22, 2015, the DHO conducted Petitioner's hearing, with a staff representative present. Id. at 20-24. Afterwards, the DHO found Petitioner guilty of the charge against him. Id. As a result, Petitioner was subjected to the following sanctions: (1) 41 days of disallowed good conduct time; (2) 90 days of lost commissary privileges and (3) 90 days of lost phone privileges. Id. at 23. On April 24, 2015, the DHO issued her Report summarizing what had occurred during the hearing. Id. at 20-24.

### 2. Incident Report, March 14, 2015

On March 14, 2015, Petitioner was charged with refusing a drug/alcohol test, in violation of Prohibited Act Code § 110. Attach. C at 2, ECF No. 17-4. The reporting officer stated that he administered a breathalyzer test to Petitioner after he saw him exit the "Education grill" during a locked-down count. Id. As the officer questioned him, Petitioner stated that he thought he was "on the call out for the Law Library." Id. Following their conversation, the officer then administered a breathalyzer test. Id. The officer gave Petitioner three chances to complete the test. Id. However, each time the test was administered it registered "NO GO," meaning that Petitioner did not register enough air for the machine to determine a positive or negative reading. Id. As a result, Petitioner was issued his second Incident Report on March 14, 2015, because failing to adequately blow into the breathalyzer test is deemed equivalent to failing the test. Id. at 2, 14. A copy of the Incident Report was delivered to Petitioner on March 14, 2015. Id.

at 2. The UDC considered the report and referred to the DHO for further action on March 17, 2015. Id.

On April 8, 2015, the DHO held Petitioner's hearing with a staff representative present. Id. at 10-14. Afterwards, the DHO found Petitioner guilty of the charge against him. Id. at 13. Consequently, Petitioner was subjected to the following sanctions: (1) 41 Days of Disallowed Good Conduct Time; (2) 90 Days of Lost Commissary Privileges and (3) 90 Days of Lost Email Privileges. Id. The DHO issued her Report summarizing the events of the hearing on April 13, 2015. Id. at 10-14.

### 3. Incident Report, April 6, 2015

On April 6, 2015, Petitioner was charged with possession of alcohol, in violation of Prohibited Act Code § 113. Attach. D at 2, ECF No. 17-5. The reporting officer stated that, while conducting his rounds, he smelled the odor of homemade intoxicants coming from Petitioner's cell. Id. As he was searching the cell, the officer discovered a laundry detergent bottle that contained a substance that, after being tested, produced an alcohol result of 0.343 percent. Id. An Incident Report was prepared and a copy of the report was given to Petitioner that day. Id. On April 9, 2015, the UDC referred the matter to the DHO for further action due to the severity of the charge. Id.

On April 22, 2015, the DHO held Petitioner's hearing with a staff representative present. Id. at 9-12. Afterwards, the DHO found Petitioner guilty of the charge against him. Id. As a result, Petitioner was subjected to the following sanctions: (1) 41 Days of Disallowed Good Conduct Time; (2) 28 Days of Forfeited Non-Vested Good Conduct Time; (3) 30 Days of Disciplinary Segregation Suspended 120 Days; (4) 120 Days of Lost Commissary Privileges; (5) 120 Days of Lost Email Privileges and (6) 120 Days of

Lost Visiting Privileges. Id. at 12. The DHO issued her Report on April 24, 2015. Id. at 9-12.

4.  **Incident Report, May 31, 2015**

On May 31, 2015, Petitioner was charged with possession of intoxicants, in violation of Prohibited Act Code § 113. Attach. E at 2, ECF No. 17-6. The reporting officer stated that, while he was conducting a random cell search of Petitioner's cell, he discovered two plastic jars that contained heavily fermented fruit and liquid. Id. The jars were tested using the Alco-Sensor III, and the alcohol content registered at 0.140 percent. Id. The Incident Report was delivered to Petitioner on May 31, 2015. Id. On June 1, 2015, the UDC referred the matter to the DHO for a hearing. Id.

On June 18, 2015, the DHO held Petitioner's hearing with a staff representative present. Id. at 11-15. Afterwards, the DHO found Petitioner guilty of the charge against him. Id. Therefore, Petitioner was subjected to the following sanctions: (1) 41 Days of Disallowed Good Conduct Time; (2) 82 Days of Forfeited Non-Vested Good Conduct Time; (3) 30 Days of Disciplinary Segregation imposed per incident report 2701951; (4) 180 Days of Lost Commissary Privileges; (5) 180 Days of Lost Email Privileges and (6) a $100.00 Monetary Fine. Id. The DHO issued her Report on June 24, 2015. Id.

I.CONTENTIONS OF THE PARTIES

Petitioner challenges each Incident Report, arguing that his convictions for the disciplinary code infractions do not comport with the Fifth and Fourteenth Amendments of the U.S. Constitution and are not supported by sufficient evidence. ECF No. 1. Specifically, regarding the first Incident Report, Petitioner alleges that: (1) the DHO wrongfully changed his code-111 violation to a code-113 violation; (2) the DHO did not

5

notify him of the new report within 24 hours; (3) the Incident Report fails to state that alcohol was found or made and (4) the DHO was not impartial during the disciplinary hearing. Id. Petitioner argues that the second Incident Report should be expunged because, rather than refusing to take the test, various medical conditions prevented him from completing the breathalyzer test. Id. As for the third Incident Report, Petitioner alleges that the alcohol found in his room was placed there by someone else while he was seeking medical attention. Id. Finally, Petitioner argues that the fourth Incident Report should be expunged because: (1) the alcohol found in ice water under the sink was fruit cocktail and (2) there was no photographic proof that the Alco-Sensor tested the content to be 0.140 percent alcohol. Id. Petitioner requests that the Court restore all of his Good Time Credits and expunge all four Incident Reports. Id.

In his response to the Petition, Respondent argues that Petitioner received the due process rights required by Wolff v. McDonnell, 418 U.S. 539 (1974). ECF No. 17. Accordingly, Respondent requests that the Court dismiss the Petition with prejudice. Id. In his reply to the response, Petitioner argues that the pictures contained in Incident Report No. 2672561 were not "certified to[ ] or sworn to." ECF No. 23 at 6.

## II. DISCUSSION

### A. Legal Standards

#### 1. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

6

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)).

In doing so, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility

7

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**2. Summary Judgment**

When a Motion to Dismiss is accompanied by affidavits, exhibits and other documents as in this case, the motion will be construed as a motion for summary judgment. The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

8

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**B.   Analysis of the Petition**

Petitioner argues that the four Incident Reports violated his federal Constitutional Rights. ECF No. 1 at 3-4. Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designed by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5) providing impartial fact finders.

Id. at 564-571.

A prison disciplinary determination comports with due process if "some evidence" supports the decision. See Superintendent v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses or even weighing the evidence. See id. at 455; Baker, 904 F.2d at 932; Thompson v. Owens, 889 F.2d 500, 501-02 (3rd Cir. 1989). Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." Hill, 472 U.S. at 457. With these rules in mind, the undersigned will examine each of the contested Incident Reports in turn.

1. **Incident Report, April 7, 2015**

In the present case, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received written notice of the charges against him more than twenty-four hours before his two disciplinary hearings. Petitioner was provided with the original Incident Report on January 17, 2015, and the first hearing was held on or about February 4, 2015. After the Incident Report was rewritten, Petitioner was provided with the new report on April 7, 2015, and the second hearing was held on April 22, 2015. Therefore, Petitioner received a copy of the initial Incident Report and rewritten Incident Report more than twenty-four hours before the respective disciplinary proceedings.

Second, after the disciplinary proceedings, Petitioner was provided with a report of what had occurred during the two hearings, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Third, Petitioner was

10

afforded the opportunity to call witnesses on his own behalf during his disciplinary hearings and was able to present a defense. ECF No. 17 at 13-14. Fourth, Petitioner exercised his right to the assistance of a staff representative during his disciplinary hearings. Id. at 16-19. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges.[3]

Petitioner argues that he was denied due process because a second Incident Report should not have been issued. However, 28 C.F.R. § 541.5 provides:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.
>
> (b) Investigation. After you receive an incident report, a Bureau staff member will investigate it. . . .

28 C.F.R. § 541.5. To the extent that Petitioner asserts error in the rewriting of the disciplinary report, the undersigned finds no basis to afford Petitioner relief. First, there is no prohibition in Section 541.5 on preparing a revised or rewritten Incident Report. Here, the report was revised to provide greater clarity by including the Alco-Sensor III test results, and Petitioner received the report days prior to the disciplinary hearing. This sequence of events demonstrates that Petitioner had adequate notice of the revisions prior to hearing and does not suggest that he was denied due process. See Carrut v. Fondren, 2009 WL 825775, at *5 (D. Minn. 2009) (stating that the rewritten incident report that provided greater detail on charges did not deny the petitioner due process

---
[3] See 28 C.F.R. § 541.16(b).

but rather provided the petitioner adequate notice and the opportunity to defend against the charges); Scott v. Martinez, 2009 WL 79041 *4 (M.D. Pa. 2009) ("Nothing in the policy of the BOP prohibits it from correcting an error or seeking more information with regard to an incident report that is written, and Scott was not prejudiced by the rewritten incident report, as it did not impair his ability to present a full defense throughout the disciplinary process."). Therefore, the undersigned finds that Petitioner's due process rights were not violated by the issuance of this Incident Report and that Petitioner's challenges to the report are without merit.

### 2. Incident Report, March 14, 2015

In regards to this Incident Report, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's hearing was held on April 8, 2015, and he was provided with an Incident Report on March 14, 2015. ECF No. 17-4 at 10. Therefore, Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearing, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Id. at 14. Third, Petitioner was afforded the opportunity to call witnesses on his own behalf during his disciplinary hearing and was able to present a defense. Id. at 7. Fourth, Petitioner invoked his right to have a staff representative present during his disciplinary hearing. Id. at 8-10. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearing

because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges.

Petitioner argues that certain medications and medical conditions prevented him from completing the breathalyzer test. ECF No. 1 at 3-4. However, the DHO relied on an email from Assistant Health Services Administrator Michelle Krock in making her final decision. ECF No. 17-4 at 4. In the email, Ms. Krock explained that Petitioner had numerous medical issues, but nothing specific to a breathing disorder. Id. Ms. Krock also noted that Petitioner's claims that he had a breathing disorder were false because he had not been noted as having such issues in the past. Id. Therefore, the undersigned finds that Petitioner was afforded proper due process rights in the administration of this Incident Report and that Petitioner's challenges to this report are without merit.

### 3. Incident Report, April 6, 2015

In this case, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's hearing was held on April 22, 2015, and he was provided with an Incident Report on April 6, 2015. ECF No. 17-5 at 2, 12. Therefore, Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearing, Petitioner was provided with a report from the DHO of what had occurred during the hearing, which included evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Id. at 12. Third, Petitioner

exercised his right to call a witness during this disciplinary proceeding. The witness testified regarding Petitioner's unlocked cell door during his medical leave absence. Id. at 10-11. Fourth, Petitioner also exercised his right to obtain aid from a staff representative who assisted his defense during the disciplinary hearing. Id. at 7-9. Finally, Petitioner was provided with an impartial fact finder during this disciplinary hearing because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges.

Petitioner argues that the alcohol was placed in his cell by someone else while he was seeking medical attention. ECF No. 1 at 3-4. However, the evidence presented to the DHO showed that Petitioner inventoried his cell when he returned. ECF No. 17-5 at 10-11. This would have given him ample opportunity to report any foreign items that were not present when Petitioner left. This finding comports with the "some evidence" standard that was established in Hill. Accordingly, the undersigned finds that Petitioner was afforded proper due process rights in the administration of this Incident Report and that Petitioner's challenges to this report are without merit.

### 4. Incident Report, May 31, 2015

In regards to this Incident Report, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's hearing was held on June 18, 2015, and he received an Incident Report on May 31, 2015. ECF No. 17-6 at 2, 11. Therefore,

Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearing, Petitioner received a report from the DHO regarding what occurred at the hearing, which included evidence upon which the DHO relied and the reasons for Petitioner's sanctions. Id. at 15. Third, Petitioner was instructed of his right to call witnesses on his behalf during his disciplinary hearing and was able to present a defense. Id. at 7. Fourth, Petitioner exercised his right to have assistance from a staff representative at his disciplinary hearing. Id. at 8-9, 11. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearing because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges.

Petitioner argues that this Incident Report should be expunged because no photographs were taken to indicate the alcohol content level of the liquid found within the two jars. ECF No. 1 at 3-4. However, the undersigned finds this argument to be unpersuasive. While reviewing all of the evidence, the DHO considered a memorandum from Acting Lieutenant Degenhart, which stated that the liquid was tested using the Alco-Sensor III and registered a positive reading of 0.140 percent. ECF No. 17-6 at 4. Despite the fact that no photographs were taken of this result, the DHO's finding comports with the "some evidence" standard established in Hill because the memorandum is sufficient to support the conclusion that was reached by the DHO. Accordingly, the undersigned finds that Petitioner was afforded proper due process

rights in the administration of this Incident Report and that Petitioner's challenges to this report are without merit.

I.

II.RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss [ECF No. 16] be **GRANTED**, and the Petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to provide a copy to all counsel of record, as applicable, as provided in the Administrative

Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

      **DATED:** July 22, 2016

                                                          /s/ Robert W. Trumble
                                        ROBERT W. TRUMBLE
                                        UNITED STATES MAGISTRATE JUDGE